1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN RIVERA,<br><br>                                  Petitioner,<br><br>v.<br><br>BRIAN CATES, Warden,<br><br>                                  Respondent. | Case No. 21-cv-01586-TWR (AGS)<br><br>**ORDER: 1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; 2) DENYING CERTIFICATE OF APPEALABILITY.** |

## INTRODUCTION

Petitioner Nathan Rivera ("Rivera" or "Petitioner"), a state prisoner represented by counsel, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet," *see* ECF No. 1.).  The Court has read and considered the Petition and the Memorandum of Points and Authorities in Support of the Petition (*see* ECF Nos. 1, 1-2), the Answer and Memorandum of Points and Authorities in Support of the Answer (*see* ECF Nos. 6, 6-1), the Traverse (*see* ECF No. 10), the lodgments and other documents filed in this case, and the legal arguments presented by both parties.  For the reasons discussed below, the Court **DENIES** the Petition and **DENIES** a Certificate of Appealability.

/ / /

/ / /

/ / /

# FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Parle v. Fraley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  The state appellate court recited the facts as follows:

> Rivera dated the victim and lived with her. They often argued and their neighbors heard many of their arguments. During one argument, Rivera broke the victim's nose. During another argument, a neighbor had to physically intervene to prevent Rivera from attacking the victim. The victim told neighbor D.J. she was "beside herself" because she had asked Rivera to leave their home and he refused.

> One afternoon, the victim went to neighbor T.W.'s home. Upset and crying, the victim told T.W. she had awakened to Rivera having sex with her. Then, when someone had knocked on the door of their home, Rivera put his hand over her mouth and held a knife to her throat. The victim told T.W. she was scared and wanted Rivera to leave.

> The next morning, D.J. visited the victim in the victim's home for about 15 minutes. D.J.'s boyfriend and Rivera were also present. The victim did not have any visible injuries or blood on her face, but she was quiet and did not seem like herself.

> Later in the morning, T.W. saw Rivera trying to open the gate to the property where their homes were located. When Rivera saw her, he stopped what he was doing and ran to a nearby truck belonging to another neighbor. The truck's doors were unlocked, its engine was idling, and one of the victim and Rivera's two dogs was inside. Rivera got in the truck, "peeled out," "crashed right through the gate," and sped away running over a bicycle that had fallen out of the truck bed. The truck's owner had not given Rivera permission to drive the truck.

> Remembering her conversation with the victim the prior afternoon, T.W. suspected something was wrong and looked for the victim to make sure the victim was safe. After repeatedly calling for the victim and the victim and Rivera's other dog, T.W. banged on the door to the victim's home and tried

21-cv-01586-TWR (AGS)

to open it, but it was locked. She then noticed the home had a newly broken window. She stood on a large object and looked through the window into the home. She saw the victim's shoe hanging on the side of the bed and a wet stain on the bed. She jumped through the window and grabbed the victim's shoe to see whether the victim was still alive. The victim "was laid stiff" and had been "shoved in between the wall and the bed." T.W. ran out of the victim's home and yelled for someone to call the police. D.J. call 911 and firefighters quickly arrived.

A firefighter/paramedic found the victim squeezed in between the bed and the wall. The victim was not breathing and did not have a pulse. Her face was purple and she had lividity in her lower leg, which is a pooling of blood indicating the blood had not been circulating for a while. The investigating officer, a sheriff's detective, saw a bloodstain on one of the corners of the victim's mattress. The detective also saw injuries on the victim's face as well as blood in [the] victim's hair, on the left side of her face, and oozing from her nose and mouth. In addition, the victim had moon-shaped abrasions on both sides of her neck, which looked like fingernail marks and were consistent with an attempt to keep something away from her neck.

The next day, a sheriff's deputy found the truck Rivera used to flee. Another sheriff's deputy found Rivera approximately a mile and a half away sitting on a guardrail of an embankment. He had his and the victim's dogs with him. He had scratches on his arms, hands, and torso as well as a bruise on his lower stomach. His injuries were consistent with defense injuries sustained by strangling another person who was fighting back.

Rivera's DNA matched DNA on swabs of the victim's neck and fingernails. The victim's DNA matched the DNA on swabs of Rivera's right hand.

A deputy medical examiner inspected the victim's body at the crime scene. He saw bruises and abrasions on the left side of her face, neck, and body. He also saw abrasions on the right side of her nose, abrasions on both sides of her chin, and bruises on both sides of her upper lip.

During the victim's autopsy, the deputy medical examiner saw a bite mark on the left side of the victim's face and abrasions on her left eyebrow and upper lip. Her scalp had extensive hemorrhage consistent with blunt force trauma. She had petechial hemorrhages (ruptured and bleeding capillaries caused by sustained external pressure) in her mouth, around her left eye, and

extending to her face and neck area. She also had significant hemorrhages in her front neck muscles as well as a fracture in the hyoid bone and in the thyroid cartilage of her neck.

The deputy medical examiner determined the manner of death was homicide. He determined the cause of death was asphyxia due to strangulation by external pressure to the victim's neck area. According to him, it takes approximately 10 to 20 seconds of at least intermittent pressure for a well-nourished woman to lose consciousness from strangulation. It takes an additional two to four minutes of pressure to cause death.

Toxicology tests showed the victim's blood contained high levels of methamphetamine. Although the presence of methamphetamine could have hastened the victim's death, methamphetamine did not cause her injuries or her death.

(*See* Lodgment No. 17, ECF No. 7-17 at 4–7.)

## PROCEDURAL BACKGROUND

On September 17, 2017, the San Diego County District Attorney's Office filed an Information charging Nathan Carmello Rivera with one count of murder, a violation of California Penal Code § 187(a), and one count of auto theft, a violation of California Vehicle Code § 10851(a). (*See* Lodgment No. 1, ECF No. 7-1 at 7–8.) The Information also alleged that Rivera had previously been convicted of a serious felony, within the meaning of California Penal Code §§ 667(a)(1), 668, and 1192.7(c), and had suffered two prior "strike" convictions, within the meaning of California Penal Code §§ 667(b)–(i), 1170.12, and 668. *See id*. at 8. Following a jury trial, Rivera was convicted of first degree murder and vehicle theft. (*See* Lodgment No. 9, ECF No. 7-9 at 7.) Rivera admitted he had suffered the prior convictions as alleged. (*See* Lodgment No. 7, ECF No. 7-7 at 243–48.)

Rivera appealed his conviction to the California Court of Appeal for the Fourth Appellate District. (*See* Lodgment Nos. 12–14, 16, ECF Nos. 7-12–7-14, 7-16.) The California appellate court affirmed Rivera's murder conviction but concluded there was insufficient evidence to support his felony conviction for auto theft. (*See* Lodgment No.

17, ECF No. 7-17.)   The appellate court remanded the case "to allow the People an opportunity to elect whether to retry Rivera for a felony violation of Vehicle Code section 10851(a) . . . or to accept the existing conviction's reduction to a misdemeanor." (*See id*. at 23.)[1]  Upon remand, the San Diego District Attorney's office declined to retry Rivera on the auto theft charge. (*See* Lodgment No. 24, ECF No. 7-24 at 404-06.)  Rivera's petition for review, which he filed in the California Supreme Court, was summarily denied. (*See* Lodgment Nos. 18–19, ECF Nos. 7-18–7-19.)   On September 15, 2020, Rivera filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied in a written opinion. (*See* Lodgment Nos. 30–31, ECF Nos. 7-30–7-31.)[2]

Rivera filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C § 2254 and a Memorandum in Support of Petition for Writ of Habeas Corpus in this Court on September 8, 2021.  (*See* ECF Nos. 1, 1-1.)   Respondent filed an Answer and a Memorandum of Points and Authorities in Support of the Answer on December 15, 2021. (*See* ECF No. 6, 6-1.)  Rivera filed a Traverse on February 22, 2022. (*See* ECF No. 10.)

## ANALYSIS

Rivera raises three grounds in his Petition.   First, he claims the state court's conclusion that sufficient evidence was presented to support his conviction for premeditated murder was an unreasonable application of clearly established Supreme Court law and was based on an unreasonable determination of the facts. (*See* Pet., ECF

---

[1] The state appellate court also vacated Rivera's sentence in order to permit the lower court to consider "whether to exercise its recently acquired discretion to strike the punishment for the prior serious felony conviction finding." (*See* Lodgment No. 17, ECF No. 7-17 at 4.)  The sentencing issues were not raised by Petitioner in his federal habeas Petition and are therefore not before this Court. (*See* Pet., ECF No. 1; Pet'r's Mem. of P. & A., ECF No. 1-2.)

[2] Respondent states that Rivera "sought habeas relief on a variety of claims in the trial court and in the California Court of Appeal, all of which were denied and none of which appear relevant to his current Petition," (*see* Resp't's Mem. of P. & A., ECF No. 6-1 at 3), but has provided only one of the state habeas corpus petitions Rivera filed in state court. (*See* Lodgment Nos. 30–31, ECF Nos. 7-30–7-31.)

No. 1 at 6; Pet'r's Mem. of P. & A., ECF No. 1-2 at 19–34.)  Second, Rivera argues his due process rights to a fair trial were violated by the introduction of testimony from Rivera's former girlfriend about violence he had committed against her.  (*See* Pet., ECF No. 1 at 7; Pet'r's Mem. of P. & A., ECF No. 1-2 at 34–54.)  And third, Rivera contends trial counsel was ineffective for failing to renew her objection to the introduction of evidence of Rivera's prior domestic violence after one of the victims testified that no abuse had occurred.  (*See* Pet., ECF No. 1 at 8; Pet'r's Mem. of P. & A., ECF No. 1-2 at 55–61.) Respondent argues the state court's denial of Rivera's claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, nor were they based on an unreasonable determination of the facts.  (*See* Resp't's Mem. of P. & A., ECF No. 6-1 at 6–11.)

## I.   Standard of Review

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication, (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  *See* 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or, if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant

relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. *See id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75–76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

### A. Sufficiency of Evidence

Rivera argues in his first argument that the state court's conclusion that sufficient evidence was presented to support his conviction for first degree murder was an unreasonable application of clearly established Supreme Court law and was based on an unreasonable determination of the facts. (*See* Pet., ECF No. 1 at 6; Pet'r's Mem. of P. & A., ECF No. 1-2 at 19–34; Traverse, ECF No. 10 at 5–8.) Specifically, Rivera contends there was insufficient evidence of premeditation and deliberation because there was no evidence of planning, motive, or preconceived design. (*See* Pet'r's Mem. of P. & A., ECF No. 1-2 at 19–34; Traverse, ECF No. 10 at 5–8.)

Rivera raised this claim in the Petition for Review he filed in the California Supreme Court. (*See* Lodgment No. 18, ECF. No. 7-18.)  The California Supreme Court summarily denied Rivera's petition for review.  (*See* Lodgment No. 19, ECF No. 7-19.)  Thus, this Court must "look through" to the state appellate court's opinion denying this claim as the basis for its analysis.  *See Ylst*, 501 U.S. at 805–06. That court wrote:

> First degree murder includes any willful, deliberate, and premeditated killing. (Pen. Cod § 189.) "In this context, ' "premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." ' " (*People v. Jennings* (2010) 50 Cal.4th 616, 645.) " ' "An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse." [Citation.] A reviewing court normally considers three kinds of evidence to determine whether a finding of premeditation and deliberation is adequately supported – preexisting motive, planning activity, and manner of killing – but "[t]hese factors need not be present in any particular combination to find substantial evidence of premeditation and deliberation." ' " (*People v. Burney* (2009) 47 Cal.4th 203, 235; accord, *People v. Brady* (2010) 50 Cal.4th 547, 561–562.)

> Here, there was substantial evidence to support and the jury could have reasonably found Rivera had a motive to kill the victim. Specifically, the jury could have reasonably found Rivera wanted to kill the victim because she wanted to end their relationship and have him leave their home. (*See People v. Pensinger* (1991) 52 Cal.3d 1210, 1238 ["the incomprehensibility of the motive does not mean that the jury could not reasonably infer that the defendant entertained and acted on it"]; *People v. Wright* (1985) 39 Cal.3d 576, 593 [same].)

> There was also substantial evidence to support and the jury could have reasonably found Rivera had a preconceived design to kill from the manner of the victim's death – asphyxiation by strangulation. (*See People v. Soloman* (2010) 49 Cal.4th 792, 815 [a jury could reasonably infer from the victim's death by asphyxiation that the defendant had time to consider the murderous nature of his actions]; *People v. Hovarter* (2008) 44 Cal.4th 983, 1019–1020 [evidence the victim's death by asphyxiation would have taken several minutes supports a finding of deliberation because it shows the defendant had ample time to consider the nature of his deadly act]; *People v. Bonillas* (1989) 48 Cal.3d 757, 792 ["Ligature strangulation is in its nature a deliberate act"].)

As there was substantial evidence of a motive to kill and a preconceived design to kill, we conclude there was substantial evidence of premeditation and deliberation to support's Rivera's first degree murder conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1183 [a reviewing court will sustain a first degree murder conviction where there is evidence of a motive to kill along with evidence of either planning or a manner of killing indicating a preconceived design to kill]; *People v. Edwards* (1991) 54 Cal.3d 787, 813–814 [same]; *see People v. Memro* (1995) 4 Cal.4th 786, 863–864 [method of killing may be sufficient by itself to support a finding of premeditation and deliberation].)

(*See* Lodgment No. 17, ECF No. 7-17 at 8–9.)

The Due Process Clause of the Constitution guarantees defendants the right to be convicted only upon proof of every element of a crime beyond a reasonable doubt. *See Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). On federal habeas corpus review of a conviction on sufficiency of evidence grounds, however, a petitioner "faces a heavy burden" to establish a due process violation. *See id*. In assessing a sufficiency of the evidence claim, a state court must apply the standard announced by the Supreme Court in *Jackson v. Virginia*, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Moreover, under AEDPA "the standards of *Jackson* are applied 'with an additional layer of deference,' requiring the federal court to determine 'whether the decision of the [state court] reflected an "unreasonable application of" *Jackson* . . . to the facts of this case.'" *See Maquiz v. Hedgpeth*, 907 F.3d 1212, 1217 (9th Cir. 2018) (citing *Juan H*., 408 F.3d at 1274–75).

While circumstantial evidence can be sufficient to support a conviction, "[s]peculation and conjecture cannot take the place of reasonable inferences and evidence . . . ." *See Juan H.*, 408 F.3d at 1279; *see also Maquiz*, 907 F.3d at 1217–18. A federal habeas court must be "mindful of 'the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review.'" *See Juan H.*, 408 F.3d at 1274 (quoting *Wright v. West*, 505 U.S. 277, 296-97 (1992)).

Deference under AEDPA, however, "does not imply abandonment or abdication of judicial review." *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  In determining whether sufficient evidence has been presented, the Court refers to the elements of the crime as defined by state law.  *See Jackson*, 443 U.S. at 324, n. 16; *Juan H.*, 408 F.3d at 1276.

"First degree murder, like second degree murder, is the unlawful killing of a human being with malice aforethought, but has the additional elements of willfulness, premeditation, and deliberation which trigger a heightened penalty." *People v. Chiu*, 59 Cal. 4th 155, 166 (2014), *superseded by statute on other grounds as stated by People v. Lewis*, 11 Cal. 5th 952 (2021).  "'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance . . . . The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." *People v. Koontz*, 27 Cal.4th 1041, 1080 (2002) (internal quotation marks and citations omitted).  Consistent with these definitions, the jury in Rivera's case was instructed as follows:

520. First or Second Degree Murder
With Malice Aforethought
(Pen. Code, § 187)

The defendant is charged in Count 1 with murder in violation of Penal Code section  187.

To prove that the defendant is guilty of this crime, the People must prove that:

    1. The defendant committed an act that caused the death of another person; AND

    2. When the defendant acted, he had a state of mind called malice aforethought.

There are two kinds of malice aforethought, express malice and implied malice.

Proof of either is sufficient to establish the state of mind required for murder.

The defendant acted with express malice if he unlawfully intended to kill. ·

The defendant acted with implied malice if:

    1. He intentionally committed an act;

    2. The natural and probable consequences of the act were dangerous to human life;

    3. At the time he acted, he knew his act was dangerous to human life; AND

    4. He deliberately acted with conscious disregard for human life.

Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is omitted. It does not require deliberation or the passage of any particular period of time.

An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A *substantial factor* is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death.

If you decide that the defendant committed murder, it is murder of the second degree, unless the People have proved beyond a reasonable doubt that it is murder of the first degree as defined in CALCRIM No. 521.

. . . .

/ / /

/ / /

## 521. First Degree Murder (Pen. Code, § 189)

The defendant has been prosecuted for first degree murder under the theory that the murder was willful, deliberate, and premeditated.

You may not find the defendant guilty of first degree murder unless all of you agree that the People have proved that the defendant committed murder.

The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the acts that caused death.

The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time.

The requirements for second degree murder based on express or implied malice are explained in CALCRIM No. 520, *First or Second Degree Murder With Malice Aforethought*.

The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder.

(*See* Lodgment No. 1, ECF No. 7-1 at 139–41.)

Rivera had a history of violent behavior toward Hixon. Tamara Wheaton, Hixon and Rivera's neighbor, testified that Rivera had physically attacked Hixon before and had to be stopped by other people. (*See* Lodgment No. 5, ECF No. 7-5 at 76.) The day before the murder, Hixon told Wheaton she had awakened to Rivera having nonconsensual sex with her and that when he heard others outside he put a knife to her throat and covered her mouth. (*See id.* at 78.) Deanna Johnson, another neighbor, testified that during one

argument she heard between Rivera and Hixon, Hixon came out of their trailer with a broken nose. (*See id*. at 136.)   Both Wheaton and Johnson testified they witnessed numerous arguments between Rivera and Hixon, that the frequency and intensity of the arguments were escalating, and that Hixon wanted Rivera to leave but he refused to do so. (*See id.* at 74–76, 137.)   The coroner, Robert Stanley, testified Hixon had been strangled, her hyoid bone had been broken, and there was damage to the muscles in her neck and thyroid. (*See* Lodgment No. 7, ECF No. 7-7 at 148–52.)   Hixon had also suffered blunt force trauma to her head. (*See id.* at 153.) Stanley testified that pressure would have had to have been applied to Hixon's neck for ten to twenty seconds to render Hixon unconscious and an additional two to four minutes in order to kill her. (*See id.* at 165.)

From this evidence, a rational trier of fact could have concluded that Rivera responded to Hixon's desire for him to move out with escalating violence and that when he strangled Hixon he intended to kill her because he was angry that Hixon wanted to end their relationship.   Further, a rational jury could have concluded that Rivera had time to reflect on what he was doing during the interval between when he rendered Hixon unconscious and when he crushed her hyoid bone and chose to kill Hixon.   Accordingly, the Court concludes the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See Bell*, 535 U.S. at 694; 28 U.S.C. § 2254(d)(1).

Rivera also argues the state court's denial of this claim was based on an unreasonable determination of the facts because insufficient evidence was presented to establish premeditation and deliberation. (*See* Pet'r's Mem. of P. & A., ECF No. 1-2 at 22-23; Traverse, ECF No. 10 at 5–8.)   Specifically, he argues there was no evidence of planning, motive, or "preconceived design to kill," which he contends the prosecution was required to show, citing *People v. Anderson*, 70 Cal. 2d 15, 25 (1968). (*See* Pet., ECF No. 1 at 6; Pet'r's Mem. of P & A., ECF No. 1-2 at 26-34.)   "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"   *Ochoa v. Davis*, 16 F.4th 1314, 1325–26 (quoting *Wood*

*v. Allen*, 558 U.S. 290, 301 (2010)).  A federal court can only conclude a factual finding is unreasonable if it is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), abrogation on other grounds as recognized by *Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014).

While the California Supreme Court in *Anderson* identified evidence of planning, motive, or "preconceived design to kill" as relevant to a determination of whether sufficient evidence supported a finding of premeditation and deliberation, subsequent California cases have explained that "[*Anderson*'s] guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight." *See People v. Halvorsen*, 42 Cal. 4th 379, 419–420 (2007).  Given the evidence discussed above – Rivera's neighbors' testimony regarding witnessing his escalating physical abuse of Hixon, her desire for Rivera to move out and his refusal to do so, Hixon's statement to Wheaton the day before the murder that Rivera had nonconsensual sex with her, then put a knife to her throat and covered her mouth when he heard people nearby, as well as coroner Stanley's testimony that Hixon had been strangled to death and that it would have taken two to four minutes of pressure on her neck in order to kill her – the Court finds the state appellate court reasonably concluded the trial record was sufficient to support a finding of premeditation and deliberation. *See Taylor*, 366 F.3d at 1000.  Moreover, federal habeas corpus relief is not available for errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991).

The state appellate court's decision was not contrary to clearly established Supreme Court law.  Citing California law, the state court used the correct standard to evaluate Rivera's sufficiency of evidence claim when it identified the standard as "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*See* Lodgment No. J, ECF No. 7-17 at 8; *Jackson*, 443 U.S. at 419.  Nor was the decision an unreasonable application of clearly established Supreme Court law or based on an unreasonable

determination of the facts as discussed above.  *See Bell,* 535 U.S. at 694.  Rivera is not entitled to relief as to this claim.  *See* 28 U.S.C. § 2254(d)(1)–(2).

### B. Admission of Prior Acts Testimony

Second, Rivera argues his due process right to a fair trial were violated when the trial court admitted evidence that he had assaulted the mother of his children, Jennifer Davidson, approximately nineteen years before the murder of Hixon.  (*See* Pet., ECF No. 1 at 7; Pet'r's Mem. of P. & A., ECF No. 1-2 at 34–54; Traverse, ECF No. 10 at 8–9.) Respondent contends the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (*See* Resp't's Mem. of P. & A., ECF No. 6-1 at 7–9.)

Character evidence is generally inadmissible pursuant to California Evidence Code § 1101. Cal. Evid. Code § 1101.  The prosecutor in Rivera's case sought to introduce evidence of his prior domestic violence against Davidson and a former girlfriend, Shannon Gohlich, pursuant to California Evidence Code § 1109 which provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."[3] Cal. Evid. Code § 1109(a).  If the "acts occur[ed] more than 10 years before the charged offense [they are] inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice."  Cal. Evid. Code § 1109(e).

The assaults on Davidson occurred in 1998 and the assaults on Gohlich occurred in 2005.  (*See* Lodgment No. 4, ECF No. 7-4 at 15–18.)  After determining the evidence was not more prejudicial than probative and that the introduction of the evidence was in the interest of justice, the trial judge permitted some of the evidence to be introduced.  (*See*

---

[3] California Evidence Code § 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

*id.*)  In particular, the judge reasoned that the assaults against Gohlich were more recent, which in turn made the older assaults against Davidson more relevant.  (*See* Lodgment No. 6, ECF No. 7-6 at 58.)  When the prosecutor told the judge she was having trouble transporting Gohlich to the trial and that she may not testify, the judge noted that "part of the rationale in which I found Ms. Davidson's testimony not being stale or too old was the fact that Ms. Gohlich was going to present an event in 2005," and that her not testifying "could affect that determination."  (*See id*.)  Gohlich eventually did testify at trial, but denied the abuse.  (*See* Lodgment No. 7, ECF No. 7-7 at 23–31.)  Only Davidson testified that Rivera had assaulted her.  (*See id.* at 32–59.)

Rivera raised this claim in the Petition for Review he filed in the California Supreme Court.  (*See* Lodgment No. 18, ECF No. 7-18.)  The California Supreme Court summarily denied Rivera's petition for review.  (*See* Lodgment No. 19, ECF No. 7-19.)  Thus, this Court must "look through" to the state appellate court's opinion denying this claim as the basis for its analysis.  *See Ylst*, 501 U.S. at 805–06.  That court wrote:

> "Character or propensity evidence, including evidence of a person's prior conduct, is generally inadmissible to prove the person's conduct on a specified occasion. ([Evid. Code,] § 1101, subd. (a); *People v. Villatoro* (2012) 54 Cal.4th 1152, 1159.) However, '[t]he Legislature has . . . created specific exceptions to the rule against admitting character evidence in cases involving sexual offenses ([Evid. Cod.] § 1108, subd. (a)), and domestic violence, elder or dependent abuse, and child abuse ([Evid. Code,] § 1109, subd. (a)(1)–(3).'" (*Disa*, *supra*, 1 Cal.App.5th at p. 670.)

> One of these specific exceptions is Evidence Code section 1109, subdivision (a), which provides in pertinent part, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] [s]ection 1101 if the evidence is not

> inadmissible pursuant to [Evident Code] [s]ection 352." " '[T]he California Legislature has determined the policy considerations favoring the exclusion of uncharged domestic violence offense are outweighed in criminal domestic violence cases by the policy considerations favoring the admission of such evidence.' " (*Brown*, *supra*, 192 Cal.App.4th at p. 1232.)

i.

"Before admitting evidence under [Evidence Code] section 1109, the trial court must exercise its discretion to determine whether the probative value of the evidence is 'substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' ([Evid. Code,] § 352.)" (*People v. Kerley* (2018) 23 Cal.App.5th 513, 532 (*Kerley*).) While the record must affirmatively show the court conducted the requisite weighing, the court is not required to expressly do so, or to expressly state it has done so. (*People v. Clair* (1992) 2 Cal.4th 629, 660; *People v. Mickey* (1991) 54 Cal.3d 612, 656.) In this case, the record affirmatively shows the court satisfied its obligation. Both parties extensively briefed the point, Rivera's counsel twice argued the point, and the court made a conscious choice to admit part of the evidence and exclude part of it, including the fact some of the incidents resulted in convictions. "[N]o more was required." (Clair, at p. 660; *People v. Megown* (2018) 28 Cal.App.5th 157, 164 (*Megown*).)

ii.

In determining whether the admission of evidence of prior acts of domestic violence was unduly prejudicial, we consider "whether the prior acts of domestic violence were more inflammatory than the charged conduct, the possibility the jury might confuse the prior acts with the charged acts, how recent were the prior acts, and whether the defendant had already been convicted and punished for the prior offense(s)." (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119.) Here, Rivera's prior acts of domestic violence were not more inflammatory than the charged offense, which included strangling the victim and wedging her body between a bed and a wall. The prior acts and the charged offense were also sufficiently distinct to preclude the possibility the jury would confuse them.

Although the prior acts against his children's mother occurred 20 to 23 years before the charged offense, evidence of acts occurring more than 10 years before the charged offense is admissible if the court determines admission of the evidence is in the interest of justice. (Evid. Code, § 1109, subd. (e).) "Remote prior conduct is, at least theoretically, less probative of propensity than more recent misconduct. [Citation.] This is especially true if the defendant has led a substantially blameless life in the interim ...." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 534.) Nonetheless, the statute "'anticipates that some remote prior incidents will be deemed admissible and

vests the courts with substantial discretion in setting an "interest of justice" standard.' [Citation.] '[T]he "interest of justice" exception is met where the trial court engages in a balancing of factors for and against admission under [Evidence Code] section 352 and concludes ... that the evidence was "more probative than prejudicial." ' [Citation.]" *Megown*, *supra*, 28 Cal.App.5th at p. 168.)

Here, the evidence of the prior acts of domestic violence against his children's mother remained probative of Rivera's propensity for domestic violence because this evidence, coupled with the evidence of the prior acts of domestic violence against his former girlfriend, showed Rivera had a consistent pattern of engaging in domestic violence and had not led a blameless life between the domestic violence involving the mother of his children and the domestic violence that occurred in this case. (See *Kerley*, *supra*, 23 Cal.App.5th at p. 538.)

The fact Rivera's former girlfriend ultimately denied the past incident of domestic violence against her does not undermine the court's decision to admit evidence of the past incidents of domestic violence against his children's mother. The court made its decision before the former girlfriend testified, the parties did not dispute the incident against the former girlfriend actually occurred (Rivera was convicted as a result of it), and Rivera has not supplied any authority indicating the court had an obligation to sua sponte reconsider its decision to allow evidence of Rivera's past acts of domestic violence against his children's mother in light of the former girlfriend's testimony.

(*See* Lodgment No. 17, ECF No. 7-17 at 15–17.)

As Respondent notes, there is no clearly established Supreme Court law which holds that character or "propensity" evidence is inadmissible or violates due process. *See Kipp v. Davis*, 971 F.3d 939, 951–52, n.8 (9th Cir. 2020). Indeed, the Supreme Court expressly reserved deciding that issue in *Estelle v. McGuire*, 502 U.S. 62, 75, n.5 (1991). *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008); *Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006). As the Ninth Circuit has noted:

The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [citation omitted], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such

"clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application."

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Williams v. Taylor*, 529 U.S. 362, 375 (2000), *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

In fact, Ninth Circuit precedent "squarely forecloses" the claim that admission of propensity evidence violates due process. *See Mejia*, 534 F.3d at 1046; *see also Chavarria v. Hamlet*, 472 Fed. Appx. 749, 750 (9th Cir. 2012); *Greel v. Martel*, 472 Fed. Appx. 503, 504 (9th Cir. 2012).[4]  Thus, because there is no clearly established Supreme Court law holding the admission of propensity evidence violates due process, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See Musladin*, 549 U.S. at 77.

Moreover, there was no error in admitting the evidence under general due process principles.  In order to establish that an evidentiary ruling violated his due process rights, Rivera must show "there are no permissible inferences the jury may [have] draw[n] from the evidence." *See Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (emphasis in original).  Evidence of Rivera's prior physical assaults on the mother of his children was undeniably relevant to the jury's decision as to whether he strangled Hixon accidentally or intentionally.  The prior uncharged conduct helped establish the necessary intent to convict Rivera of the crimes.

For the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *See* 28 U.S.C. § 2254(d); *Yarborough*, 540 U.S. at 4.  Nor was it based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(2).  Rivera is not entitled to relief as to this claim.

/ / /

---

[4] Pursuant to Ninth Circuit Rule 36-3(c), "Unpublished decisions and orders of [the Ninth Circuit] issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1."

### C. Ineffective Assistance of Counsel

Finally, Rivera argues that his trial counsel was ineffective because she failed to renew her objection to the admission of Davidson's testimony after Gohlich testified she had not been assaulted by Rivera.  (*See* Pet., ECF No. 1 at 8; Pet'r's Mem. of P. & A., ECF No. 1-2 at 55–61; Traverse, ECF No. 10 at 9–10.)  He contends that because the judge's decision to admit Davidson's testimony about Rivera's assaults, despite the fact that, they had occurred in 1998 was based in large part on Gohlich's testimony about being assaulted by Rivera in 2005, counsel should have argued that Davidson's testimony was no longer admissible pursuant to California Evidence Code § 1109.  (*See id.*)  Respondent argues the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (*See* Resp't's Mem. of P. & A., ECF No. 9–10.)

Rivera raised this claim in the Petition for Review he filed in the California Supreme Court.  (*See* Lodgment No. 18, ECF. No. 7-18.)  The California Supreme Court summarily denied Rivera's petition for review. (*See* Lodgment No. 19, ECF No. 7-19.)  Thus, this Court must "look through" to the state appellate court's opinion denying this claim as the basis for its analysis.  *See Ylst*, 501 U.S. at 805–06. That court wrote:

> Rivera also has not established his counsel was ineffective for failing to renew her objections to this evidence. "To establish ineffective assistance of counsel, ' " 'a defendant must first show counsel's performance was "deficient" because [counsel's] "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." ' " ' [Citation.] ' "[T]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " ' [Citation.] 'In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' [Citation.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1051.)
>
> Here, there is a conceivable tactical reason for counsel's actions. Had counsel relied on the former girlfriend's denial of domestic violence to renew her objection and asked the court to exclude evidence of Rivera's past acts of

21-cv-01586-TWR (AGS)

1
2
3
4
5
6

domestic violence against his children's mother, the prosecutor likely would have countered with a request to admit evidence the incident against the former girlfriend resulted in a conviction. The court likely would have simply left its ruling unchanged since the parties did not dispute the incident against the former girlfriend actually occurred. However, had the court allowed evidence of the conviction to counter the former girlfriend's denials, this outcome would have been worse for Rivera. Thus, his counsel could have reasonably decided the best course for Rivera was not to renew the objection.

7

(*See* Lodgment No. 17, ECF No. 7-17 at 17–18.)

8
9
10
11
12
13
14
15
16
17

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. He must also show he was prejudiced by counsel's errors. *See id*. at 694. Prejudice can be demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id*.; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

18
19
20
21
22
23
24
25
26
27

Further, Strickland requires "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *See Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *See id*. at 686–87. On federal habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *See Strickland*, 466 U.S. at 697.

28

The trial record indicates that Rivera suffered a conviction as the result of his assault

21

on Gohlich.  (*See* Lodgment No. 4, ECF No. 7-4 at 18.)  Thus, any objection by Rivera's trial counsel to the admission of Davidson's testimony would have been futile because the prosecution would have likely been able to successfully argue for the admission of Rivera's conviction for his assault on Gohlich.  *See People v. Merchant*, 40 Cal. App. 5th 1179, 1194–95 (2019) (finding a conviction for false imprisonment of his girlfriend qualified as a prior act of domestic violence and was admissible pursuant to California Evidence Code § 1109); *People v. Brown* 192 Cal. App. 4th 1212, 1233 (2011) (stating that "[t]he admission of prior acts as propensity evidence encompasses both charged and uncharged acts") (citing *People v. Falsetta*, 21 Cal. 4th 903, 917–918 (1999); *People v. Brown*, 77 Cal. App. 4th 1324, 1332–1334 (2011); *People v. Garcia*, 89 Cal. App. 4th 1321, 1331–1332 (2001)).  Counsel is not required to make futile objections in order to be competent, and thus Rivera has not established the deficient performance prong of *Strickland*.  *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (stating that "the failure to take futile action can never be deficient performance"); *Rowland v. Chappell*, 902 F. Supp. 2d 1296, 1328–29 (N.D. Cal. 2012); *Trevino v. Evans*, 521 F. Supp. 2d 1104, 1111 (S.D. Cal. 2007); *Gordon v. Lizarraga*, 859 Fed. Appx. 177, 179 (Jun. 28, 2021).[5]

For the same reasons, Rivera has not established he was prejudiced by any error by counsel.  *See Strickland*, 466 U.S. at 694.  Even if counsel had objected, the evidence of Rivera's assault on Gohlich would have likely been admitted.  Accordingly, the state court denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *See* 28 U.S.C. § 2254(d); *Yarborough*, 540 U.S. at 4.  Nor was it based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(2).  Rivera is not entitled to relief as to this claim.

/ / /

/ / /

---

[5] *See* footnote 4.

1

## CONCLUSION

2    For the foregoing reasons, the Court **DENIES** the Petition.  28 U.S.C. § 2254

3   requires the District Court to "issue or deny a certificate of appealability when it enters a

4   final order adverse to the applicant."  *See* Rule 11, 28 U.S.C. foll. § 2254.  A certificate of

5   appealability will issue when the petitioner makes a "substantial showing of the denial of

6   a constitutional right."  *See* 28 U.S.C. § 2253; *Pham v. Terhune*, 400 F.3d 740, 742 (9th

7   Cir. 2005).  A "substantial showing" requires a demonstration that "'reasonable jurists

8   would find the district court's assessment of the constitutional claims debatable or wrong.'"

9   *See Beaty v. Stewart*, 303 F.3d 975, 984 (9th  Cir. 2002) (quoting *Slack v. McDaniel*, 529

10   U.S. 473, 484 (2000)).  Here, the Court concludes that reasonable jurists could not find the

11   constitutional claims debatable, and therefore a certificate of appealability is **DENIED**.

12    **IT IS SO ORDERED.**

13   Dated:  May 17, 2022

14   _____
     Honorable Todd W. Robinson
15   United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

21-cv-01586-TWR (AGS)